# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY FLINT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Commissioner of Social Security | : | NO. 21-554 |

## O P I N I O N

SCOTT W. REID                                                     DATE: April 26, 2022
UNITED STATES MAGISTRATE JUDGE

Timothy Flint brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that his Request for Review should be denied, and judgment entered in favor of the Commissioner.

**I.**  *Factual and Procedural Background*

Flint was born on January 14, 1977. Record at 187. He completed college. Record at 216. He worked in the past as a registered nurse, and as a home health care nurse. Record at 217. On February 19, 2019, Flint filed an application for DIB, asserting disability since August 14, 2014, due to back impairments, musculoskeletal pain, status post-right knee meniscectomy, status post-shoulder labrum repair and debridement, arthritis in the left knee, and chronic pelvic pain. Record at 187, 215. His alleged disabled date was later amended to December 21, 2017, because the earlier period was *res judicata* under the denial of an earlier application for benefits. Record at 39.

Flint's application for benefits was denied initially and upon reconsideration. Record at 119, 126. Flint then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 130. A hearing was held before an ALJ on April 7, 2020. Record at 32. On April 21, 2020, however, the ALJ issued a written decision denying benefits. Record at 15. The Appeals Council denied Flint's request for review on December 8, 2020. Record at 1. Flint then filed this action.

**II.**   ***Legal Standards***

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s)

that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

### III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Flint suffered from the severe impairments of lumbar disc disease, lumbar radiculopathy, residuals of right knee meniscal tear, residuals of repair of right shoulder rotator cuff tear, migraine headaches, and obesity. Record at 18. She found, however, that no impairment or combination of impairments met or medically equaled a listed impairment. *Id*.

As to Flint's RFC, the ALJ wrote:

I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR §404.1567(b) except he can sit for six hours total and stand and/or walk for four hours total in an eight-hour workday. He can never climb ladders, ropes, or scaffolds. He can never kneel or crawl. He can occasionally stoop, crouch, and climb ramps/stairs. He can never operate foot controls bilaterally. He can occasionally reach overhead and in any direction with the right upper extremity. He can frequently handle, finger, and feel with the right hand. He can have occasional

>exposure to vibration, machinery, wetness, and extreme cold/heat.  He can have no exposure to heights.

Record at 18-9.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that, although Flint could not return to his prior relevant work, he could work as a parimutuel ticket seller, information clerk, or storages facility rental clerk.  Record at 26.  She decided, therefore, that he was not disabled.

In Flint's Request for Review, he argues that the ALJ failed to properly assess his subjective symptoms, in violation of Social Security Ruling ("SSR") 16-3p.  He maintains that the medical evidence supported his claims of disabling chronic pain.

**IV.**   ***Discussion***

    *A.*    *Social Security Ruling 16-3p*

SSR 16-3 sets forth the standards an ALJ is to apply when evaluating a claimant's subjective allegations, including claims of pain.  2017 WL 5180304 (Oct. 25, 2017).  It sets forth a two-step process.  First, an ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's pain or other subjective symptoms.  *Id*.  A medically determinable impairment is one that can be shown by medically acceptable clinical or laboratory diagnostic techniques.  *Id*.

Second, if the ALJ determines that an underlying impairment exists that could reasonably be expected to produce the alleged symptoms,  the ALJ will determine the extent to which the claimant's symptoms limit his or her ability to perform work-related activities, by considering the intensity and persistence of the symptoms.  *Id*.  Where the objective medical evidence does not substantiate the claimant's own statements in this regard, the ALJ must consider all of the other evidence of record in making this determination.  *Id*.

In this case, the ALJ cited SSR 16-3p, and explained the two-step process for evaluating subjective symptoms. Record at 19. She concluded that Flint's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, but that his statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence. Record at 20. She specified that Flint's statements were inconsistent with the objective medical evidence and his course of treatment. *Id*. As above, Flint maintains that this conclusion was a misapplication of SSR 16-3p.

B.     *The Musculoskeletal Impairments*

The ALJ recognized that Flint alleged worsening pain in his lumbar spine, shoulders, and knees, as well as pain in the cervical spine, toes, and genital area. Record at 20, 41. He testified that his pain increased with standing and movement after around 15 minutes, or sitting for 20-25 minutes. Record at 20, 42-3. He could walk for 10-15 minutes at a time, and could climb twelve stairs. Record at 20, 43, 44. Lying down relieved some pain, although it increased his back pain, so that he had to reposition himself often in bed. Record at 20, 43. He paid his niece to clean his house for him, and family members shoveled his walkways when it snowed. Record at 20, 45.

Yet, the ALJ also noted that Flint was able to live alone for half the year (he stayed with his parents in Florida for the other six months). Record at 20, 40. He continued to drive. Record at 20, 40. He could also prepare simple meals for himself. Record at 20, 45.

Flint points out that there are numerous medical records reflecting treatment for musculoskeletal complaints. He had meniscal surgery on his knee in 2015 and 2016, and a repair of a tear in his left rotator cuff in March, 2018. He also underwent knee and shoulder injections to relieve his pain. The ALJ recognized this. Record at 20, 22.

Further, although the ALJ did not discuss every one of the 835 pages of treatment notes, she did describe some notes in detail, particularly the most recent. She discussed, for example, a May 3, 2018, EMG which showed evidence of right L5-S1 radiculopathy, although without focal nerve entrapment, plexopathy, or polyneuropathy. Record at 22, 1097. On January 7, 2019, Flint was found to have a limited range of motion in the neck and shoulders with documented sensory deficit and weakness in the hands. Record at 22, 1108. The ALJ also considered evidence of treatment for genital pain, and abdominal pain. Record at 21, 327, 1047; 23, 547-584.

Nevertheless, the ALJ also noted that in April, 2019, a year after surgery, Flint's left shoulder showed a "reasonably good range of motion." Record at 22, 1112. Left shoulder mobility had increased by May 30, 2019, and Flint's right shoulder had a full range of motion, with no evidence of "impingement or rotator cuff pathology." Record at 23, 1116. Also on May 30, 2019, Flint's straight leg raising test was normal, which indicated the absence of radicular symptoms, although antalgia and trigger points were observed. Record at 23, 1116.

The ALJ also noted that Flint had physical therapy after his shoulder surgery, but stopped attending. Record at 22. The ALJ accurately quoted a physical therapy noted dated September 10, 2018, as stating "Unfortunately the patient has not returned for additional therapy." *Id*. Flint argues that the ALJ should have noted his explanation that he discontinued physical therapy because he had "plateaued." Record at 41, 481. This dispute seems of little significance, given that Flint acknowledges that that the ALJ "did not describe any inference drawn from the fact" that he discontinued physical therapy. Plaintiff's Brief at 9. Further, Flint's description of

6

himself as having "plateaued" is inconsistent with an August 28, 2018, therapy note stating: "Pt demonstrated nearly full L shoulder ROM this visit." Record at 479.[1]

After this fairly extensive survey of the record with respect to Flint's musculoskeletal impairments, the ALJ wrote: "these records support reducing the claimant to light exertion with reduced standing and walking to account for residual issues with the upper extremity and to address his radiating back pain." Record at 23.

In so deciding, the ALJ was supported by the opinions of James Butcofski, MD, the agency expert who initially reviewed Flint's record, and Chankun Chung, MD, who reviewed Flint's record on reconsideration. Record at 24; 95-98 (Dr. Butcofski); 108-111 (Dr. Chung). Drs. Butcofski and Chung agreed that Flint was capable of a limited range of light work. *Id*. The ALJ added postural limitations not specified by Drs. Butcofski and Chung, however, to address Flint's manipulative restrictions with his right hand, the residuals of his knee surgery, and his lumbar radiculopathy. Record at 24.

Flint did not submit any medical opinion supported by a function-by-function assessment of his limitations. He points to the treatment notes of pain specialist, Randall Smith, M.D., which frequently call Flint "unable to work" or "permanently disabled." However, as the ALJ explained, under Agency guidelines, a doctor's opinion as to disability (as opposed to his medical assessment of a disorder) is "inherently neither valuable nor persuasive," because disability under the Agency standards is an administrative decision. 20 C.F.R. §404.1520b(c)(3)(i); *and see*, *e.g.*, *Trent v. Kijakazi*, Civ. A. No. 20-4237, 2022 WL 866682 at

---

[1] Possibly also relevant is a physical therapy note, apparently from the August 28, 2018, appointment, which states: "Educated patient that with chronic pain, hurt does not always equal harm. Educated patient on the importance of gradually returning to normal life activities. Pt appeared only minimally receptive to education with little input or follow-up questions." Record at 475.

*12, (E.D. Pa. Mar. 23, 2022); *Erbe v. Commissioner of Social Security*, Civ. A. No. 20-2132, 2022 WL 1105672 at *7 (M.D. Pa. Apr. 13, 2022).

In any event, following the most recent physical examination, on January 7, 2019, Dr. Smith described Flint as having "reasonably good" alignment, stance, gait and muscle tone, and no localized joint swelling in his arms or legs. Record at 890. This would seem consistent with the ALJ's conclusion that Flint could perform some work.

Thus, although Flint argues that the ALJ "rejected" his "testimony concerning his persistent chronic back pain and radiculopathy," the many limitations included in her RFC assessment show that the ALJ credited his testimony to a great extent. Indeed, Flint's radiculopathy was specifically cited by the ALJ in her decision to impose more limitations in the RFC assessment than those proposed by the agency reviewing physicians. Record at 24. Flint has not, therefore, shown that the ALJ failed to comply with her duty under SSR 16-3p with regard to his musculoskeletal impairments.

    C.    *Migraine Headaches*

Flint did not initially allege migraine headaches in his February 19, 2019, application for benefits. Record at 215. He did not mention headaches in the Function Report he completed on May 7, 2019, as part of his application, nor did he list any headache medications. Record at 235-242. Upon reconsideration, when Flint was asked whether he suffered from any new medical conditions since his application date, he responded "No," although he did mention the migraine medication at this time. Record at 250, 255.

This is despite the fact that, on June 12, 2017, Flint sought treatment for a resurgence of migraine headaches with visual disturbances from which he had suffered in the past. Record at 941. Flint told Matthew Mendlik, M.D., a neurologist, that he had stopped taking the migraine

medication he had formerly been prescribed. Record at 942. He reported that, in May, 2017, he had a recurrence of his headaches with visual disturbances. *Id*. Dr. Mendlik prescribed amitriptyline. Record at 943.

By Flint's next visit to Dr. Mendlik, on November 27, 2017, he was taking his former medication, Inderol, daily. Record at 958. He reported that this helped "80%." *Id*. He had not needed to take Sumatriptan – which was prescribed for acute migraine – since his last visit to Dr. Mendlik, although he had occasional "lower-level" headaches. Record at 958, 959. His neurological examination was normal. Record at 959.

At his hearing before the ALJ, Flint testified that, since December, 2017, he had a "full-blown migraine" two to three times in a year. Record at 49-50. After four to five hours the "majority of the pain" would be gone, but milder symptoms could linger for three to four days, or even a week. Record at 51. During this time, Flint testified, he would mostly remain in bed. *Id*. Even when not experiencing "full-blown" migraine headaches, Flint would occasionally experience a migraine "aura" which caused him visual disturbances from strong light, and his symptoms would aggravate unless he modified the light in the room and turned off his electronic devices. Record at 51-2.

The ALJ wrote that some of the limitations she included in Flint's RFC assessment were intended to "prevent his headaches." Record at 24. She wrote, however, that the headaches had "not been proven as severe as he has alleged to allow for further restrictions." *Id*. Importantly, there are no notes from Dr. Mendlik recording the frequent disruptive auras Flint described. In fact, the record contains no report of treatment for migraines after November 27, 2017.

In his Request for Review, Flint argues that the ALJ erred in failing to consider the "long period of recovery" he experienced after a "full-blown migraine." The ALJ did, however, report

9

Flint's testimony that, after a migraine headache, "upon resuming activity, it can cause the pain to return." Record at 20. Given that "full-blown" migraines only occurred two or three times a year, however, the ALJ may not have felt that this warranted any further limitation in the RFC assessment. Alternatively, in the absence of treatment records pertaining to migraine after November, 2017, the ALJ may have concluded that Flint's testimony that he had to remain in bed during his recovery period was inconsistent with the record. Notably, Flint did not obtain vocational testimony indicating that absences due to his migraine headaches would be work-preclusive. Record at 65-6.

Thus, Flint has not shown that the ALJ either ignored or rejected the evidence that he suffered from migraine headaches. She discussed his testimony in this regard, reviewed the relevant medical records, and included limitations designed to prevent headaches in the RFC assessment. No violation of SSR 16-3p is apparent, and the decision is adequately supported by substantial evidence.

V.     **Conclusion**

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*
_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE